The next case on the calendar is Martinez v. Mount Sinai. Good morning, Your Honor. So I'm David Abrams here on behalf of Ms. Martinez, and I respectfully submit the district court was incorrect in its decision, granting summary judgment against my client. I respectfully submit that the record shows that at a minimum, there was an issue of fact as to all the elements she needed to show under the New York City Human Rights Law. And most importantly, she put the employer on notice that the final incident, the lateness that she was discharged for, was due to her medical condition. And I submit that- There's evidence in the record that she told them that her tardiness was because of an eye condition rather than other factors. Well- Other than what she says now. Is there any record of that? I know that they changed her starting time so that they would accommodate her, but- Well- Did she ever say it's because I have this eye condition? Yes, Your Honor. For one thing- What's the proof of that? For one thing, she sent a text message to the person that she worked underneath saying, my eye's acting up today, and this is on the last day of work. That was a colleague, though, wasn't it? It wasn't her supervisor. Well, it was someone who she worked underneath. I would say the evidence shows that that person had enough authority over her that that person could be considered a supervisor. She also testified- That was the last day. What about before then? She also testified that some of the times that she was written up for coming to work late, she mentioned that it was due to her condition. And then, of course, the last piece of evidence- Did the times when she was disciplined for that, is there any record of the hospital that shows that she said it's because of her eye rather than she's just late? In terms of documents, I don't think so, Your Honor. And then the last thing, of course, is the hospitals' records do show that when she grieved her discharge, she advised them. Of course, that's after she's terminated. That's correct, Your Honor. So it's our position that according to what she said and the evidence she's presented, there's an issue of fact as to whether the employer was on notice as to her condition and the need to accommodate her. Of course, the other legal issue in the case is whether after she's discharged, the post-termination- Let me stop there. Let's even assume, for the sake of argument, that there's enough in the record to conclude that she informed the employer in some way. It seems to me it would have to be based solely on her statement, at her deposition that she did, uncorroborated by anything else. But let's assume that's enough. Your client was offered an accommodation, two different accommodations, and she selected one. And she never said that that accommodation was insufficient. So why isn't, as the district court concluded, that enough to resolve this case? Well, Your Honor, an accommodation has to be something that lets someone perform the job. And here, on the final incident where she was late to work a couple hours due to her condition, just having a simple change in schedule would not have been enough. She accepted it. That's the point. She accepted it. Didn't say no because there are times when I just won't be able to meet that. And then she contacts not the people that she's dealing with who she previously dealt with about the accommodation. She contacts a person, a colleague, and she gets fired for that. I don't understand how you then hold the hospital responsible for- And then she notifies someone who has no power whatsoever to accommodate her. And now she's here in circuit court saying that we should send it back to the district court to revive her claim. I don't see how that follows. Well, I would respectfully submit that the change in schedule doesn't foreclose her forever. Sure, she can ask. But she never contacted the one person that she had dealt with to ask. She didn't. She offers as an excuse the fact that she emails a colleague and says she's going to be late. That doesn't sound like requesting an accommodation of a person who has the authority to give it to her. And I would respectfully submit that under the law, she does not have to ask. Okay. All right. The other legal issue- What about when she called in late that day? Sorry? What about when she called in late that day and left a message before she talks to the colleague? Didn't she say in her deposition that she said in that message that it was because of her eye and then when you played the message there was nothing there? Is that true? I think that's correct, Your Honor. So I still think, you know, if we assume for the sake of argument that in her deposition she misremembered what she said, I submit that given the statements at the prior warnings and the text message and the post-termination message that that's sufficient to put the employer on notice and that she doesn't have to formally request anything. What I was starting to say was there doesn't seem to be any dispute that after she was discharged, she made the employer aware of the reasons. And I submit that under the city human rights law, the post-termination grievance, that's a term, condition, or privilege of employment to which her rights attach. And therefore, it was wrong for the employer to deny that grievance. I have nothing further to add unless there's any other questions. Thank you. Thank you. Good morning. My name is Rory McEvoy. I represent the defendant of Pelley at the Mount Sinai Hospital. I think as the court has asked Mr. Abrams, there's no evidence in this record that the hospital was aware that Ms. Martinez suffered from this eye condition prior to the grievance that Mr. Abrams referred to. The four individuals who were involved in the decision to terminate her all swore out affidavits that they had no knowledge. The co-worker who Mr. Abrams refers to as receiving the text, which she did, testified at her deposition that she's not the plaintiff's supervisor, and she had no authority to approve an absence or accommodate Ms. Martinez's claim. And then there are the problems of the fact that I think, as Your Honor mentioned, there is the phone call where she testified at her deposition, oh, I told them it was because of my eye, and the recording of the phone call says she didn't. She testified that she submitted doctor's notes and doctor's letters. They weren't produced in discovery by the plaintiff. They don't exist in any of the medical records that we obtain in discovery, and there's no record of any of them at Mount Sinai. And lastly, she testified that her eye condition was treated for every flare-up that she had for the last ten years by a Dr. Jackson. And when we submitted a HIPAA-compliant authorization for the release of her records, what we got back was a statement saying there is no such patient at this facility. So she received a number of warnings, which the court is aware of. She never filed a grievance regarding any of the warnings having to do with her absenteeism, although she did file a grievance with regard to a warning she received for insubordination. In her performance evaluations over seven or eight years, they all mentioned or frequently mentioned absenteeism. In the comments section, she never mentioned the fact that this was because of her eye condition. It simply is sort of illogical that over that long a period of time, up to and including when she was told, if you're absent one more time, you'll be fired, that she would not have told somebody in some document somewhere that she suffered from this eye condition. And there is not one person, not one document, not one medical record in this record that suggests that she suffered from this condition. And then on the flip side, the evidence that she introduced is nothing more than sort of the self-serving, conclusionary testimony that's sort of been rejected by this court on a number of occasions as being sufficient to avoid some re-judgment. As a matter of fact, her testimony is so inconsistent at her deposition. At one point, when asked, well, did you tell your supervisors about your eye condition? She said, I don't remember, I don't know. Then at another point, she says she did. That testimony is so conflicting that if you look at the brief submitted by the plaintiff to this court, and if you go back to the 56.1 statement submitted to the district court, there are virtually no citations to that part of the record. What we have now is an affidavit that was submitted by the plaintiff that has a whole new version of what took place. And even that is conclusionary. I think it's all in paragraph 15 of her affidavit, which is in the record. And so no reasonable juror could ever enter a verdict in favor of the plaintiff with that evidence. Just briefly, with regard to the accommodation, as the court pointed out, Ms. Martinez was offered two accommodations to change her start time. She accepted one. She didn't accept the other. She never said she needed another accommodation, never said that that accommodation seems sufficient. Is there any record when you did give her the later start time, is there any record of what she had, or the basis for it, why was she late all the time, and why did she think an extra half hour would help her? Is there anything in the records about that? No, Your Honor. I think what it is is that she did testify to her deputant that not all of her absence, she was absent late, rather, 84 times in a fairly short period of time. She said some of them were due to her eyes, some of them were due to other reasons. She never claimed them at all. I mean, at the time it was granted that you'd come in at 8.30 rather than 8.00. I think that was the switch, right? Right. Is there anything in the hospital's records that say this is why we gave her this break? I don't think so. I think they offered her a start time, she was originally scheduled to work 8 to 4. Then they offered her 8.30 to 4.30 or 9 to 5, I think at the same time. And she accepted the 8.30 to 4. And I think the purpose of it was they had given her a final warning at that point for lateness. And that when they sat with her to talk about the final warning, they had a discussion with her about some way to avoid that problem. So other than the fact that it's connected to the issuance of the final warning and the discussion of the final warning, I think that's the reason it was done, because at that point it was an attempt to save her from having this lateness problem or have her correct the lateness problem. So I think that they have fulfilled their obligations to accommodate her. And then lastly, with regard to the issue about her post-termination grievance, first the argument was in the court below that somehow it applied to her because the statute uses the word persons. But a number of cases, including a case in the Southern District, have said that persons doesn't mean persons in the world at large. It means employees. And then confronted with that argument for the first time before this court, we now have the argument that the post-termination grievance is somehow a term and condition of employment. And apart from the fact that the court shouldn't consider an argument raised for the first time on appeal, the fact remains that there's no authority for that proposition, and it's after the employment relationship is over and the statute only applies to employees. So unless the court has other questions, I have nothing else. Thank you. Just to clarify, I checked, and that argument was raised at the district court level. That's point one. It is in the record. I don't think it's part of the briefs, but it's in the district court dockets. And second. It's not in the briefs. I mean, excuse me. It's not in the ñ you normally don't include the briefs from the lower court in the record. Okay. All right. It wasn't in the brief? It was in the brief that was submitted to the district court, that the right to grieve post-termination is a term and condition and privilege of employment. And then I would add that I respectfully submit my adversary's asking the court to resolve disputed issues of fact. Perhaps my client's testimony wasn't entirely consistent on what sort of notice she gave the employer, but I submit there's enough in there that a jury could believe that she did, in fact, advise the employer of the reason why she was having some problems with work. Even if we agree with you as to that, and I understand your argument, you're back at the fact that she was offered an accommodation in the statement in the problem. She didn't engage in the interactive process in any way to request any change to that accommodation, to alert the employer. There's no evidence in the record, unless I'm missing something, that she alerted the employer that that accommodation wasn't fully sufficient. And I'm not sure that you can raise in a post-termination grievance for the first time that, oh, I needed a different accommodation. I would respectfully submit that being disciplined for something and telling the employer, well, the reason why I did this thing that you're disciplining me for is because of my medical condition. I submit that that's sufficient. Yes, it's not a specific, well, the earlier accommodation you gave me is not sufficient, and we need to have an interactive process over it, but under the standards of the law, I submit that that's enough. Okay. Thank you both for your argument. The court will now take a very brief five-minute recess. Five minutes. Court is taking a recess.